TRINA A. HIGGINS, United States Attorney (#7349)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
BRENT L. ANDRUS, Assistant United States Attorney (NY #5143474)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Email: carl.lesueur@usdoj.gov

FILED US District Court-UT
NOV 06 '24 PM01:30

UN SEALED

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | Case: 2:24-cr-00357<br>Assigned To : Stewart, Ted<br>Assign. Date : 11/6/2024 |
|---|---|
| Plaintiff, | INDICTMENT |
| vs. | **Counts 1-4**: 18 U.S.C. § 1343 (Wire Fraud)<br>**Count 5**: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)<br>**Counts 6-11**: 18 U.S.C. § 1957 (Transactional Money Laundering)<br>**Counts 12-16**: 18 U.S.C. § 1956(a)(1)(B)(i) (Concealment Money Laundering) |
| AARON WAGNER, and<br>MICHAEL MAINS, | |
| Defendants. | |

The Grand Jury Charges:

1. From a date unknown to the Grand Jury, but believed to be no later than March 12, 2021, and continuing to the present, Aaron WAGNER and Michael MAINS and coconspirators (with identities known and unknown to the Grand Jury) engaged in a fraudulent scheme, as alleged in more detail below, designed to induce lenders and investors to send millions of dollars to entities WAGNER and MAINS controlled.

WAGNER represented to lenders or investors that the funds would be used for developing certain restaurants, but in fact intended to use the funds for personal expenses or investments, or to prop up projects for other investor groups (which also included himself as an investor). In all, he brought in more than $40 million from investors.

2. It was part of the fraud to lure others to invest in his scheme by using investor funds to engage in conspicuous, lavish personal spending to project to potential investors a false illusion of a successful business record. He boasted, "Every one of our investments—from residential and commercial real estate developments to rapidly-expanding restaurant chains—has succeeded because it creates an experience that buyers, customers, investors and partners relate to and find enlivening." He would post pictures of his conspicuous spending on his marketing channels, all without disclosing that his exotic cars, personal jets, multimillion dollar homes, and extravagant lifestyle were actually funded by theft.

3. WAGNER's misrepresentations extended to his personal history. For instance, in order to convince investors of his determination and ability to overcome hardship, he would tell a story of growing "From sports reject and broke college kid to playing the Rose Bowl to becoming a billion-dollar portfolio manager." But WAGNER never played in the Rose Bowl. And he never managed a billion dollar portfolio.

4. Frequently, his misuse of investor funds for his personal investments and expenses left insufficient remaining funds to get projects off the ground. He would falsely report to investors that he spent the investment funds on the business, plus invested millions of his own aside, without disclosing he had actually diverted a substantial

2

amount of investment funds to himself. He would simply explain, "[D]espite our best efforts, we were unable to achieve success." Other times, he would attempt to cover those losses by pursuing new investors in other projects, then use the new investors' money to temporarily prop up the older, already failing projects. In other words, he used new investor money—obtained through fraud—to falsely appease old investors.

5. When investors or employees were critical of his business practices, WAGNER bullied them into silence. This included persuading social media companies to delete his critics' accounts.

6. When projects were successful, he and his partner, MAINS, would siphon money to themselves before calculating the division of profits. For example, they took approximately $400,000 out of eight Crumbl stores between January 2021 and August 2022. They booked these funds as "Shift Leads" to make it appear they were wages paid to employees, instead of to themselves. As a result, profits to be shared with investors and managers were $400,000 less than they should have been.

7. WAGNER and those working at his direction would prepare pitch decks for potential investors in a specific group of restaurants. For instance, in 2021 WAGNER would represent that he intended to open ten new restaurants for each of three different brands, or thirty total new restaurants. WAGNER prepared a pitch deck seeking investment in construction and launch of 10 Hello Sugar restaurants. WAGNER represented that he had successfully opened 50 new restaurants in the last twelve months. (He had actually opened roughly 15 restaurants in that period.) Investors were promised that WagsCap had "completely disrupted the restaurant industry" since its inception.

Investors were told that WAGNER's restaurants had a "proven track record of profitability and investor distribution dividends monthly."

8. WAGNER and MAINS projected "immediate earnings, profitability, and distributions" with potential of roughly 30% annual returns along with high long-term company growth.

9. Investors were told that their investment would secure a specific percentage of ownership in a particular group of stores. For example, investors in Hello Sugar were told that the company (Sugar Group X, LLC) would raise a total of $5 million for 40% equity in 10 store locations. Investors were provided with a list of start-up expenses for each location totaling approximately $484,500. Investors were not told that funds would be diverted for any other purpose as WAGNER and MAINS saw fit. In fact, WAGNER and MAINS even had investors sign a subscription agreement reinforcing his misrepresentations that the company would use the proceeds only to acquire build out and operate the donut shops:

> <u>Use of Proceeds</u>. The Company will use the proceeds received from the Subscription Agreements to acquire, build out, and operate up to ten (10) different stores selling donuts, cookies, or other sweets under a common brand.

10. That is not how the proceeds were used. Instead, from more than $11 million investors provided to fund ten Dirty Bird restaurants, ten Kokonut Island Grill restaurants, and ten Hello Sugar restaurants, WAGNER and MAINS diverted approximately $9 million to their own purposes. For instance, they used that money instead to fund downpayments to purchase a $4 million second home for WAGNER in

4

Scottsdale Arizona, an $8 million personal airplane for WAGNER and MAINS, a $4.5 million commercial property to be developed into a nightclub called "SWAGS", and a $8 million real estate property in Missoula, Montana. They also diverted about $1 million of the investment money to other entities owned by WAGNER, a certain family member of his, or both of them.

11. Critical to concealing their scheme was their use of accounts in the name of Wagscap Food Services, LLC. WAGNER and MAINS formed Wagscap Food Services, LLC as a limited liability company in the State of Utah. It is headquartered in Lehi, Utah.

12. Through Wagscap Food Services, WAGNER and MAINS sought investment in restaurant brands such as Hello Sugar, Dirty Bird, Everbowl, Crumbl Cookies, Las Botellas, and others. Each branded restaurant was offered separately to investors under a separate company, with Wagscap Food Services owning some percentage of the entity and serving as the entity's manager. WAGNER and MAINS would divert the investors' money to Wagscap Food Services. Then they would spend the funds as they saw fit. They would draw upon investor funds diverted to Wagscap Food Services' accounts to fund extravagant living and investments made not for the restaurant investors' benefit, but their own.

## COUNTS 1-4
18 U.S.C. § 1343
(Wire Fraud)

13.   Paragraphs 1 through 12 are repeated and realleged as though fully set forth herein.

14.   **THE SCHEME.** From on or about March 12, 2021 to on or about September 27, 2024, defendants AARON WAGNER and MICHAEL MAINS devised and intended to devise a scheme to defraud private investors and lenders in restaurant businesses managed by Wagscap Food Services, LLC and other related entities, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises to those investors.

15.   **MANNER AND MEANS.** It was part of the scheme that AARON WAGNER, MICHAEL MAINS, and those acting at their direction:

    a)   would offer an investment or loan with a pitch describing a restaurant or real estate project needing funding;

    b)   would show off to investors in person and in promotional materials WAGNER's own lavish lifestyle (including personal jets, exotic vehicles, luxury vacations, etc.) to induce investors to believe that he was a successful businessman; all without disclosing that many of these indicators of success were in fact financed by investor funds he had stolen from the very businesses they were meant to support;

    c)   would provide prospective investors or lenders false information about the scope and success of his and Wagscap Food Services' past business ventures;

    d)   would falsely represent and agree that the funds would be used for investment in specific restaurants or real estate projects;

    e)   would form entities for each of the projects;

    f)   upon receiving investor funds, would divert the funds to other uses, including personal expenses and other projects;

    g)   would repeatedly raise investment or loan funds for new projects with new groups of investors or lenders;

  h) would divert funds raised from a new group of investors for one project to fund a separate, failing project for an earlier group of investors that included himself or his own entities, in order to conceal the fact that he had already squandered or diverted the investors' money and to conceal from them the fact that the funds were actually from a new or different investor group;

  i) for projects that were successful, would embezzle operating funds, artificially inflate the business expenses to cover their embezzlement, and distribute to the partners only those profits remaining after the inflated business expenses;

  j) would move funds freely among all of the different investment projects' accounts and his own assets and accounts, for the purposes of concealing the fact that he had already diverted and squandered investors' funds;

  k) would manage the projects and the books, knowing and intending to help deceive and defraud the investors; and

  l) would conceal and perpetuate the scheme by silencing critics and using deceptive means to disable social media accounts.

16. **WIRES IN FURTHERANCE OF THE SCHEME.** On or about each of the dates set forth below, in the District of Utah and elsewhere,

    AARON WAGNER, and
    MICHAEL MAINS

defendants herein and their coconspirators (with identities known and unknown to the Grand Jury), for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count, all in violation of Section 1343 of Title 18 of the United States Code:

7

| Count | Date | Description |
|---|---|---|
| 1 | December 6, 2021 | Transfer of $2,000,000 through FEDWIRE from West Gate Bank account for H.S.I.G. LLC in Nebraska to U.S. Bank account in Utah ending in x5451 for an investment in Hello Sugar restaurants; |
| 2 | April 20, 2022 | Transfer of $200,000 through FEDWIRE from Mountain America Credit Union account for L.H. to Wells Fargo Bank account ending in x9342 for Dynamic Capital LLC for an investment in a real estate property in Missoula |
| 3 | November 18, 2022 | Transfer of $2,250,000 through FEDWIRE from a Wells Fargo account for J.J. in Florida to a US Bank account for Wagscap Food Services LLC in Utah ending in x7979 as a loan from an individual for development of Dirty Bird restaurants |
| 4 | June 7, 2023 | Transfer of $5,750,250 through FEDWIRE from a California account at City National Bank to a US Bank account in Utah ending in x7979 for Wagscap Food Services LLC as an investment in Wagscap Food Services LLC |

## COUNT 5
18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

17. Paragraphs 1 through 16 are repeated and realleged as though fully set forth herein.

18. From a date that is unknown but believed to be no later than March 12, 2021 to on or about the present date, in the District of Utah and elsewhere,

AARON WAGNER, and
MICHAEL MAINS

8

defendants herein, knowingly and willfully conspired and agreed with each other and with other persons both known and unknown to the Grand Jury to commit a wire fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 1349.

19. It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud investors through the scheme described in paragraphs 1 through 16 above, and by covering up and concealing that scheme.

### COUNTS 6-11
18 U.S.C. § 1957
(Transactional Money Laundering)

20. Paragraphs 1 through 19 are repeated and realleged as though fully set forth herein.

21. On or about each of the dates below, in the District of Utah and elsewhere,

AARON WAGNER, and
MICHAEL MAINS

defendants herein, and their coconspirators did knowingly engage and attempt to engage in the monetary transactions below, each transaction constituting a separate count and each involving criminally derived property of a value greater than $10,000, which property was in fact derived from a specified unlawful activity (wire fraud in violation of 18 U.S.C. § 1343), all in violation of 18 U.S.C. § 1957:

| Count | Date | Description |
|---|---|---|
| 6 | October 15, 2021 | Transfer of $726,270.55 through FEDWIRE from a US Bank account in Utah ending in x6906 to a title company account at BBVA in Arizona, using funds from Kokonut Group X LLC (investors in Kokonut Grill restaurants); |

9

| Count | Date | Description |
|---|---|---|
| 7 | November 18, 2021 | Transfer of $1,027,715.29 through FEDWIRE from a US Bank account in Utah ending in x7979 to a Wells Fargo Bank account in California ending in x4329 using funds from investors in restaurants, including Dirty Bird, Hello Sugar, and Kokonut Island Grill |
| 8 | December 20, 2021 | Transfer of $300,000 through FEDWIRE from Wagscap Food Services LLC's U.S. Bank account ending in x7979 to an airplane company using funds obtained from H.S.I.G. LLC intended to be invested in Hello Sugar |
| 9 | April 20, 2022 | Payment of $98,946.97 from Dynamic Capital LLC's Wells Fargo account in Utah ending in x9342 to American Express for WAGNER's personal expenses, using funds obtained from L.H. intended to be invested in a real estate property in Montana |
| 10 | June 27, 2023 | Transfer of $100,000 from Dynamic Capital LLC's Wells Fargo account in Utah ending in x9342 to a Wells Fargo account in California using funds intended for restaurant projects instead for an unrelated real estate project owned by WAGNER and others |
| 11 | November 22, 2022 | Check of $293,548.40 from a US Bank account for WCFS Cantina LLC ending in x0406 to M.C. LLC using funds from J.J. intended for investment in four Dirty Bird restaurants |

### COUNTS 12-16
18 U.S.C. § 1956(a)(1)(B)(i)
(Money Laundering – Concealment of Wire Fraud Proceeds)

22. Paragraphs 1 through 21 are repeated and realleged as though fully set forth herein.

23. On or about each of the dates below, in the District of Utah and elsewhere,

AARON WAGNER, and
MICHAEL MAINS

10

defendants herein, and their coconspirators did conduct and attempt to conduct the financial transactions below, each transaction constituting a separate count, and each transaction involving the proceeds of specified unlawful activity (namely, wire fraud in violation of 18 U.S.C. § 1343), knowing that the financial transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity (wire fraud in violation of 18 U.S.C. § 1343), all in violation of 18 U.S.C. § 1956(a)(1)(B)(i):

| Count | Date | Description |
|---|---|---|
| 12 | September 30, 2021 | Payment of $500,000 by check from Wagscap Food Services LLC's US Bank account ending in x7979 using funds diverted from investors in restaurants (including Kokonut Island Grill, Hello Sugar, and Dirty Bird) to purchase a lease for office space at 4421 N. Thanksgiving Way, Lehi Utah |
| 13 | October 8, 2021 | Transfer of $4,280,387.50 by FEDWIRE from Wagscap Food Services LLC's US Bank account in Utah ending in x7979 to a title company's Zions Bancorp account in Arizona, using funds diverted from investors in restaurants (including Kokonut Island Grill, Hello Sugar, and Dirty Bird) to acquire a real property at 7323 East Shoeman Lane in Scottsdale, Arizona for Wagscap, LLC |
| 14 | November 18, 2021 | Payment of a $2,529,180.29 cashier's check to First American Title for the purchase of a property at 500 South Higgins Avenue in Missoula, Montana, using funds from investors in restaurants including Kokonut Island Grill, Hello Sugar, and Dirty Bird |
| 15 | December 30, 2021 | Transfer of $395,000 by FEDWIRE to a truck sales company owned by WAGNER's family member using funds diverted from investors in Hello Sugar restaurants to Wagscap Food Services |
| 16 | September 21, 2023 | Transfer of $100,000 by FEDWIRE from a Wells Fargo account ending in x9326 to a Central Bank account ending in x1531 for a payment on a home at |

| | | 781 North Country Manor Lane, Alpine Utah using funds originally from Kokonut Group X LLC and commingled with other funds to purchase a home in Scottsdale, Arizona |

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense violating 18 U.S.C. §§ 1343 or 1349, the defendants shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the offense.

Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of any offense violating 18 U.S.C. §§ 1343 or 1349, the defendants shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the scheme to defraud.

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. §§ 1956, 1957, or 1960, the defendants shall forfeit to the United States of America any property, real or personal, involved in the money laundering conspiracy, and any property traceable to such property.

The property sought for forfeiture under one or more of the forfeiture authorities cited above, includes, but is not limited to, the following:

- A real estate property at 500 South Higgins Avenue in Missoula, Montana
- A real estate property at 781 North Country Manor Lane, Alpine Utah
- Proceeds of the sale of a real estate property at 7323 East Shoeman Lane, Scottsdale, Arizona

- A Cirrus SR22 aircraft with serial number 1333 and tail number N1052A

The United States may seek a money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendants for one or more of the reasons listed in 21 U.S.C. § 853(p).

The United States may also seek to forfeit substitute assets under 21 U.S.C. § 853(p).

GRAND JURY'S PROBABLE CAUSE FINDING REGARDING FORFEITURE

The grand jury finds probable cause to believe that:

1. Aaron Wagner has committed the crimes specified in the above forfeiture notice;

2. The following property is 1) constituted or derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 or 1349 alleged in Counts 1 through 5, or 2) involved in one or more of the money laundering counts alleged in Counts 6 through 16, or is traceable to such property; and

3. In the event of Aaron Wagner's conviction, such property would be subject to forfeiture:

    - A real estate property at 500 South Higgins Avenue in Missoula, Montana

    - A real estate property at 781 North Country Manor Lane, Alpine Utah

    - Proceeds of the sale of a real estate property at 7323 East Shoeman Lane, Scottsdale, Arizona

- A Cirrus SR22 aircraft with serial number 1333 and tail number N1052A

A TRUE BILL:

/s/
_____
FOREPERSON OF GRAND JURY

TRINA A. HIGGINS
United States Attorney

_____
CARL D. LESUEUR
BRENT L. ANDRUS
Assistant United States Attorneys