**EXHIBIT A**



**OLD REPUBLIC TITLE**

ENT **29208:2022** PG 1 of 1
**Andrea Allen**
**Utah County Recorder**
2022 Mar 08 09:29 AM FEE 40.00 BY MG
RECORDED FOR Old Republic Title (Orem)
ELECTRONICALLY RECORDED

MAIL TAX NOTICE TO GRANTEE:
Aaron A. Wagner and Candace Wagner
781 North Country Manor Lane
Alpine, UT 84004
File Number: 1832900SM

# WARRANTY DEED

**Aaron A. Wagner**                                                   GRANTOR

for the sum of TEN DOLLARS and other good and valuable consideration hereby CONVEYS and WARRANTS to

**Aaron A. Wagner and Candace Wagner, husband and wife as joint tenants**     GRANTEE

the following tract of land in Utah County, State of Utah, to-wit

Lot 4, Plat "F", BENNETT FARMS SUBDIVISION, according to the official plat thereof, on file and of record in the office of the Utah County Recorder, State of Utah.

TAX ID NUMBER FOR PROPERTY: 35-681-0004

Subject to any easements, restrictions and rights of way appearing of record and enforceable in law and subject to general property taxes for the year 2022 and thereafter.

Effective as of this 22nd day of February, 2022.

Aaron A. Wagner

STATE OF UTAH

COUNTY OF UTAH

The foregoing instrument was acknowledged before me this 22nd day of February, 2022 by Aaron A. Wagner.

CASEY JEAN STALLONE-BOLTON
Notary Public - State of Utah
Comm. No. 720161
My Commission Expires on
Sep 1, 2025

Notary Public
Residing In:
Commission Expires:

**EXHIBIT B**

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,668,986.00 | 11-05-2019 | 11-09-2029 | 127951531 | 1C1 / 126 | | JMDms | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "* * * *" has been omitted due to text length limitations

| Borrower | AARON A WAGNER (SSN ▮▮▮▮▮▮▮) 6717 WEST NORMANDY WAY HIGHLAND, UT 84003 | Lender | CENTRAL BANK AMERICAN FORK OFFICE 175 E MAIN ST PO BOX 157 AMERICAN FORK, UT 84003 (801) 756-9900 |
|---|---|---|---|

**CREDIT LIMIT  $2,668,986 00**      **DATE OF AGREEMENT  November 5, 2019**

**Introduction**  This HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through CENTRAL BANK  In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above  The words "we," "us," "our," and "Lender" mean CENTRAL BANK  You agree to the following terms and conditions

**Promise to Pay**  You promise to pay CENTRAL BANK, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line  You will pay your Credit Line according to the payment terms set forth below  If there is more than one Borrower, each is jointly and severally liable on this Agreement  This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower  Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement  We can release any Borrower from responsibility under this Agreement, and the others will remain responsible

**Term**  The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until November 9, 2029 ("Maturity Date")  All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity  The initial advance on your Credit Line Account, in the amount of $2,662,500 00, will be made on the Opening Date to be applied toward the purchase of the property securing your Credit Line Account  The period in which advances may be made on your Credit Line Account (the "Draw Period") begins on the Opening Date and will continue as follows  10 YEARS  Except for your initial advance, your ability to obtain additional advances will begin on November 9, 2019 (the "Effective Disbursement Date")  After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain credit advances  The length of the repayment period is as follows  10 YEARS  You agree that we may renew or extend the period during which you may obtain credit advances or make payments  You further agree that we may renew or extend your Credit Line Account

**Minimum Payment**  Your "Regular Payment" will equal the amount of your accrued FINANCE CHARGES or $50 00, whichever is greater ("First Payment Stream")  You will make 120 of these payments  Your payments will be due monthly  Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges  An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment  The Minimum Payment during the First Payment Stream may not reduce the principal that is outstanding on your Credit Line

After completion of the First Payment Stream, your "Regular Payment" will be based on your outstanding balance as shown below or $50 00, whichever is greater ("Second Payment Stream")  Your payments will be due monthly

| Range of Balances | Number of Payments | Amortization Period |
|---|---|---|
| All Balances | 120 | 120 payments |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges

A change in the ANNUAL PERCENTAGE RATE can cause the balance to be repaid more quickly or more slowly  When rates decrease, less interest is due, so more of the payment repays the principal balance  When rates increase, more interest is due, so less of the payment repays the principal balance  If this happens, we may adjust your payment as follows  your payment may be increased by the amount necessary to repay the balance by the end of this payment stream  Each time the ANNUAL PERCENTAGE RATE changes, we will review the effect this change has on your Credit Line Account to see if your payment is sufficient to pay the balance by the Maturity Date  If it is not, your payment will be increased by an amount necessary to repay the balance by the Maturity Date  You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement

**How Your Payments Are Applied**  Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to Finance Charges, then to unpaid principal, and then to late charges and other charges

**Receipt of Payments**  All payments must be made in U S  dollars and must be received by us consistent with any payment instructions provided on or with your periodic billing statement  If a payment is made consistent with our payment instructions but received after 6 00 PM MOUNTAIN TIME on a business day, we will apply your payment to your Credit Line on the next business day

**Credit Limit**  This Agreement covers a revolving line of credit for the principal amount of Two Million Six Hundred Sixty-eight Thousand Nine Hundred Eighty-six & 00/100 Dollars ($2,668,986 00), which will be your "Credit Limit" under this Agreement  During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights  You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit  Your Credit Limit is the maximum amount you may have outstanding at any one time  You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit  Your Credit Limit will not be increased should you overdraw your Credit Line Account  If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you  Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling

**Charges to your Credit Line**  We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line  In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below, or as described in the Deed of Trust for this transaction  We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling  These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling  If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes  Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line  However, we have no obligation to provide any of the credit advances referred to in this paragraph

**Credit Advances**  Beginning on the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows

**Credit Line Checks**  Writing a preprinted "CREDIT LINE CHECK" that we will supply to you

**Telephone Request**  Requesting a credit advance from your Credit Line to be applied to your designated account by telephone  Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine

**Requests By Mail**  Requesting an advance by mail

**Requests in Person**  Requesting a credit advance in person at any of our authorized locations

**Debit Card Access**  Using your "CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARD" at an Automated Transaction Machine ("ATM") or point of sale terminal to withdraw or transfer funds from your checking account or other consumer asset account in excess of the available collected balance in the account

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other

**Limitations on the Use of Checks**  We reserve the right not to honor CREDIT LINE CHECKs in the following circumstances

**Credit Limit Violation**  Your Credit Limit has been or would be exceeded by paying the CREDIT LINE CHECK

**Post-dated Checks**  Your CREDIT LINE CHECK is post-dated  If a post-dated CREDIT LINE CHECK is paid and as a result any other check is returned or not paid, we are not responsible

**Stolen Checks**  Your CREDIT LINE CHECKs have been reported lost or stolen

**Unauthorized Signatures**  Your CREDIT LINE CHECK is not signed by an "Authorized Signer" as defined below

**Termination or Suspension**  Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the CREDIT LINE CHECK

**Transaction Violation**  Your CREDIT LINE CHECK is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the CREDIT LINE CHECK

If we pay any CREDIT LINE CHECK under these conditions, you must repay us, subject to applicable laws, for the amount of the CREDIT LINE CHECK  The CREDIT LINE CHECK itself will be evidence of your debt to us together with this Agreement  Our liability, if any, for wrongful dishonor of a check is limited to your actual damages  Dishonor for any reason as provided in this Agreement is not wrongful dishonor  We may choose not to return CREDIT LINE CHECKs along with your periodic billing statements, however, your use of each CREDIT LINE CHECK will be reflected on your periodic statement as a credit advance  We do not "certify" CREDIT LINE CHECKs drawn on your Credit Line

**Limitations on the Use of Debit Cards**  We reserve the right not to honor CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARDs in the following circumstances

**Credit Limit Violation**  Your Credit Limit has been or would be exceeded by paying the CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARD debit

**Stolen Debit Cards**  Your CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARDs have been reported lost or stolen

**Unauthorized Signatures**  Your CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARD is not used by an "Authorized Signer" as defined below

**Termination or Suspension**  Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we honored the Credit Line charge

If we pay any advance requested by use of the CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARD under these conditions, you must repay us  subject to applicable laws  for the amount of the advance  The advance itself will be evidence of your debt to us together with this Agreement  Our liability, if any, for wrongful dishonor of an advance is limited to your actual damages  Dishonor for any reason as provided in this Agreement is not wrongful dishonor  Your use of the CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARD will be reflected on your periodic statement as a credit advance

**Transaction Requirements**  The following transaction limitations will apply to the use of your Credit Line

**Telephone Request, Request By Mail, In Person Request, Debit Card and Credit Line CREDIT LINE CHECK** Limitations  The following transaction limitations will apply to your Credit Line and requesting an advance by telephone, requesting an advance by mail, requesting an advance in person, using a debit card and the writing of CREDIT LINE CHECKs

**Minimum Advance Amount**  The minimum amount of any credit advance that can be made on your Credit Line is  $100 00   This means any CREDIT LINE CHECK must be written for at least the minimum advance amount

**Limitation on All Access Devices**  You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness  Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction

**Authorized Signers**  The words "Authorized Signer" on CREDIT LINE CHECKs and CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARDs as used in this Agreement mean and include each person who  (a) signs the application for this Credit Line,  (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account

**Lost CREDIT LINE CHECKs and CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARDs**  If you lose your CREDIT LINE CHECKs or CENTRAL BANK HOME EQUITY CREDIT LINE VISA DEBIT CARDs or if someone is using them without your permission, you agree to let us know immediately  The fastest way to notify us is by calling us at (801) 756-9900  You also can notify us at our address shown at the beginning of this Agreement

**Liability for Unauthorized VISA Debit Card Transactions**  The following limitations may be applicable to your accounts, except as otherwise provided by law

The zero liability limit described below only applies to debit cards that are United States issued VISA Consumer Cards or VISA Business Cards for transactions processed through a VISA network or, for ATM transactions, a Plus network  The zero liability limit described below does **not**

apply to (a) other types of VISA commercial debit cards that are not VISA Business Cards, (b) transactions using your personal identification number that are not processed through a VISA network, and (c) ATM transactions which are not sent over VISA or Plus networks

Tell us AT ONCE if you believe your VISA debit card has been lost or stolen or if you believe any unauthorized transactions have been made using your VISA debit card   Your liability for unauthorized VISA debit card transactions that are processed through a VISA or Plus network, as applicable, will be zero dollars ($0 00)   However, to the extent allowed under applicable law (see for example the Liability for Unauthorized Use paragraph below) we may hold you liable for the entire amount of an unauthorized transaction if we find, based on substantial evidence, that you have been grossly negligent or fraudulent in the handling of your deposit account or VISA debit card

For VISA Business Cards   (a) in order for an unauthorized transaction to be covered by the zero liability limit described above you must notify us within sixty (60) calendar days of the mailing of the first statement showing the unauthorized transaction, and (b) an "unauthorized transaction" does not include any transaction allegedly conducted by (i) a business co-owner, (ii) the cardholder or person authorized by the cardholder, or (iii) any other person with an interest in or authority to transact business on the account

To notify us of lost or stolen cards, or of unauthorized transactions, call or write to us at the telephone number or address set forth in the Liability for Unauthorized Use paragraph below   This will help prevent unauthorized access to your account and minimize any inconvenience   We may require you to provide a written statement regarding an unauthorized VISA debit card transaction in order for the zero liability limit described above to be applied

VISA is a registered trademark of Visa in the United States and other countries

Liability For Unauthorized Use   If you notice the loss or theft of your debit card or a possible "unauthorized use" (as defined below) of your card, you should write to us immediately at CENTRAL BANK, AMERICAN FORK OFFICE, 175 E MAIN ST, PO BOX 157, AMERICAN FORK, UT 84003 or call us at (801) 756-9900

You will not be liable for any unauthorized use after you notify us   You may, however, be liable for unauthorized use that occurs before your notice to us   In any case, your liability will not exceed $50 00 or a lesser amount under applicable state law

For purposes of debit card transactions and your liability under Regulation E, "unauthorized use" means a debit card transaction from the cardholder's account initiated by a person other than the cardholder without actual authority to initiate the transfer and from which the cardholder receives no benefit   The term does not include transactions using a debit card initiated   (A) by a person who was furnished the access device to the cardholder's account by the cardholder, unless the cardholder has notified us that transactions by that person are no longer authorized,   (B)   with fraudulent intent by the cardholder or any person acting in concert with the cardholder, or   (C)   by us or our employee   Only those cardholders that are consumers (and not businesses) may be covered by the liability limits provided under Regulation E

If you use an access card which debits a checking account (or other consumer asset account) but also draws on an overdraft line of credit, Regulation E provisions may apply, as well as sections 1026 13(d) and (g) of Regulation Z   In such a transaction, you might be liable for up to $50 00 under Regulation Z   Also, you might be liable for $50 00, $500 00, or an unlimited amount under Regulation E, or a lesser amount under applicable state law   Please refer to your electronic fund transfers disclosure for liability limitations and error-resolution procedures for transactions covered by the federal Electronic Fund Transfers Act as codified in Regulation E

Future Credit Line Services   Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line   You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered   You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services

Collateral   You acknowledge this Agreement is secured by A REVOLVING CREDIT DEED OF TRUST DATED 11-05-2019 IN THE AMOUNT OF $2,668,986 00 IN THE NAME OF AARON A WAGNER FOR PROPERTY KNOWN AS 781 NORTH COUNTRY MANOR LANE, ALPINE, UT 84004, AS RECORDED IN THE OFFICE OF THE RECORDER, UTAH COUNTY, UTAH

Insurance   You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us   You may obtain property insurance through any company of your choice that is reasonably satisfactory to us   You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you   Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things

Right of Setoff   To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future   However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law   You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts

Periodic Statements   If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement, unless prohibited by applicable law   It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance "   Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due

When FINANCE CHARGES Begin to Accrue   Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date of the credit advance   There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances

Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed   A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "daily balance" method   To get the daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances, and subtract any unpaid FINANCE CHARGES and any payments or credits   This gives us the "daily balance "

Method of Determining the Amount of FINANCE CHARGE   Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein   Then we add together the periodic FINANCE CHARGES for each day in the billing cycle   This is your FINANCE CHARGE calculated by applying a Periodic Rate

Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE   We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows   We start with an independent index which is the NEW YORK PRIME AS PUBLISHED IN THE WALL STREET JOURNAL (the "Index")   We will use the most recent Index value available to us as of the date of any ANNUAL PERCENTAGE RATE adjustment   The Index is not necessarily the lowest rate charged by us on our loans   If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you   To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by 365 days   To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (366 during leap years)   This result is the ANNUAL PERCENTAGE RATE for your First

Payment Stream To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by 365 days To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (366 during leap years) This result is the **ANNUAL PERCENTAGE RATE** for your Second Payment Stream The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time Any increase in the Periodic Rate will take the form of higher payment amounts Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect WEEKLY In no event will the Periodic Rate result in a corresponding **ANNUAL PERCENTAGE RATE** that is less than 4 250% or more than 18 000%, nor will the Periodic Rate or corresponding **ANNUAL PERCENTAGE RATE** exceed the maximum rate allowed by applicable law Today the Index is 4 750% per annum, and therefore the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line are as stated below

### Current Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1 250% | 6 000% | 0 01644% |

### Current Rates for the Second Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1 250% | 6 000% | 0 01644% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds

**Conditions Under Which Other Charges May Be Imposed** You agree to pay all the other fees and charges related to your Credit Line as set forth below

**Annual Fee** A nonrefundable Annual Fee of $50 00 will be charged to your Credit Line at the following time Annually

**Returned Items** You may be charged $25 00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge

**Fee to Stop Payment** Your Credit Line Account may be charged $12 00 when you request a stop payment on your account

**Charge for Advance Less than Minimum** Your Credit Line Account may be charged $15 00 if you request a credit advance for less than the minimum advance amount disclosed above, whether we decide to honor it or whether we refuse to honor it, unless applicable law requires a lower charge or prohibits any charge

**Miscellaneous Photocopying** If you request a copy of any document, we may charge your Credit Line Account 20 00 PER HOUR RESEARCH, $3 00 PER COPY for the time it takes us to locate, copy, and mail the document to you If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges

**Late Charge** Your payment will be late if it is not received by us within 15 days after the "Payment Due Date" shown on your periodic statement If your payment is late we may charge you 5 000% of the unpaid amount of the payment or $20 00, whichever is greater

**Prepayment Penalty** If you pay your Credit Line balance in full, you may have to pay a prepayment penalty of A $300 00 FEE CHARGED FOR CLOSING THE ACCOUNT WITHIN 24 MONTHS OF THE NOTE DATE

**Scheduled Fee Changes** ANNUAL $50 00 FEE WILL BE WAIVED FOR THE FIRST YEAR

**Security Interest Charges** You agree to pay all security interest charges related to your Credit Line as set forth below

| | |
|---|---|
| Recording | $90 00 |
| Title Policy | $4,396 00 |
| Appraisal | $2,000 00 |
| Total | $6,486 00 |

**Lender's Rights** Under this Agreement, we have the following rights

**Termination and Acceleration** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition (2) You do not meet the repayment terms of this Credit Agreement (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes

**Suspension or Reduction** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances

(3) You are in default under any material obligations of this Credit Line Account We consider all of your obligations to be material Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us

and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker

    (4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement

    (5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit

    (6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice

**Change in Terms** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems) If the Index is no longer available, we will choose a new Index and margin The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original index becomes unavailable We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached

**Collection Costs** We may hire or pay someone else to help collect this Agreement if you do not pay You will pay us that amount This includes, subject to any limits under the Utah Consumer Credit Code, our reasonable attorneys' fees, if we refer the matter to an attorney, whether or not our salaried employee, and our legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law

**Rate Increase** In addition to our other rights during termination and acceleration, we may increase the variable ANNUAL PERCENTAGE RATE under this Agreement to 18 000 percent per annum The ANNUAL PERCENTAGE RATE will not exceed the maximum rate permitted by applicable law If we do not increase the ANNUAL PERCENTAGE RATE upon termination or acceleration of your Credit Line Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Credit Line Account

**Access Devices** If your Credit Line is suspended or terminated, you must immediately return to us all CREDIT LINE CHECKs and any other access devices Any use of CREDIT LINE CHECKs or other access devices following suspension or termination may be considered fraudulent You will also remain liable for any further use of CREDIT LINE CHECKs or other Credit Line access devices not returned to us

**Delay in Enforcement** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid

**Cancellation by you** If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address and return all CREDIT LINE CHECKs and any other access devices to us Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement

**Prepayment** You may prepay all or any amount owing under this Credit Line at any time, except we will be entitled to receive the prepayment penalty as stated above and to receive all accrued FINANCE CHARGES, and other charges, if any Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments Instead, they will reduce the principal balance owed on the Credit Line You agree not to send us payments marked "paid in full", "without recourse", or similar language If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to   CENTRAL BANK, AMERICAN FORK OFFICE 175 EAST MAIN ST AMERICAN FORK, UT 84003

**Notices** All notices will be sent to your address as shown in this Agreement Notices will be mailed to you at a different address if you give us written notice of a different address You agree to advise us promptly if you change your mailing address

**Credit Information and Related Matters** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense

**Transfer or Assignment** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust Your rights under this Agreement belong to you only and may not be transferred or assigned Your obligations, however, are binding on your heirs and legal representatives Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement

**Tax Consequences** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible You should consult your own tax advisor for guidance on this subject

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address CENTRAL BANK 75 NORTH UNIVERSITY AVE PROVO, UT 84603-1488

**Jury Waiver** We and you hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either us or you against the other

**ADDITIONAL PROVISIONS** AS REQUIRED BY UTAH LAW, YOU ARE HEREBY NOTIFIED THAT A NEGATIVE CREDIT REPORT REFLECTING ON YOUR CREDIT RECORD MAY BE SUBMITTED TO A CREDIT REPORTING AGENCY IF YOU FAIL TO FULFILL THE TERMS OF YOUR CREDIT OBLIGATIONS

**Governing Law** This Agreement will be governed by federal law applicable to us and to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions This Agreement has been accepted by us in the State of Utah

**Caption Headings** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the

provisions of this Agreement

**Interpretation**  You agree that this Agreement, together with the Deed of Trust, is the most reliable evidence of your agreements with us   If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place   The copy, microfilm, microfiche, or optical image will have the same validity as the original   You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the most reliable evidence of your obligation to pay

**Severability**  If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced   Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable

**Acknowledgment**  You understand and agree to the terms and conditions in this Agreement   By signing this Agreement, you acknowledge that you have read this Agreement   You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application

**BORROWER**

X _____ , Manager
    AARON A  WAGNER

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act

### Notify us in case of errors or questions about your bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

**CENTRAL BANK**
**AMERICAN FORK OFFICE**
**175 EAST MAIN ST**
**AMERICAN FORK, UT 84003**

or at the address listed on your bill  Write to us as soon as possible  We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared  You can telephone us, but doing so will not preserve your rights

In your letter, give us the following information

Your name and account number

The dollar amount of the suspected error

Describe the error and explain, if you can, why you believe there is an error  If you need more information, describe the item you are not sure about

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong  To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur

### Your rights and our responsibilities after we receive your written notice

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then  Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent  We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit  You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount  If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount  In either case, we will send you a statement of the amount you owe and the date on which it is due

If you fail to pay the amount that we think you owe, we may report you as delinquent  However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill  And, we must tell you the name of anyone we reported you to  We must tell anyone we report you to that the matter has been settled between us when it finally is

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct

**EXHIBIT C**

ENT **118625:2019** PG 1 of 8
**Jeffery Smith**
**Utah County Recorder**
2019 Nov 13 11:05 AM FEE 40.00 BY DA
RECORDED FOR Old Republic Title (Orem)
ELECTRONICALLY RECORDED

Tax Serial Number:
  35:681:0004

RECORDATION REQUESTED BY:
  CENTRAL BANK
  AMERICAN FORK OFFICE
  175 E MAIN ST
  PO BOX 157
  AMERICAN FORK, UT 84003

WHEN RECORDED MAIL TO:
  CENTRAL BANK
  AMERICAN FORK OFFICE
  175 E MAIN ST
  PO BOX 157
  AMERICAN FORK, UT 84003

SEND TAX NOTICES TO:
  AARON A. WAGNER
  6717 WEST NORMANDY WAY
  HIGHLAND, UT 84003

*1832900512*

FOR RECORDER'S USE ONLY

# REVOLVING CREDIT
## DEED OF TRUST

THIS DEED OF TRUST is dated November 5, 2019, among AARON A. WAGNER, whose address is 6717 WEST NORMANDY WAY, HIGHLAND, UT 84003 ("Trustor"); CENTRAL BANK, whose address is AMERICAN FORK OFFICE, 175 E MAIN ST, PO BOX 157, AMERICAN FORK, UT 84003 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and CENTRAL BANK, AMERICAN FORK OFFICE, whose address is P.O. BOX 157, AMERICAN FORK, UT 84003 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in UTAH County, State of Utah:

LOT 4, PLAT "F", BENNETT FARMS SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE AND OF RECORD IN THE OFFICE OF THE UTAH COUNTY RECORDER, STATE OF UTAH.

The Real Property or its address is commonly known as 781 NORTH COUNTRY MANOR LANE, ALPINE, UT 84004. The Real Property tax identification number is 35:681:0004.

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Trustor so long as Trustor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Trustor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance. The initial advance under the terms of the Credit Agreement is to be applied toward the purchase of the Property.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF TRUSTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property. The following provisions relate to the use of

Loan No: 127951531

Page 2

the Property or to other limitations on the Property. This instrument is a Trust Deed executed in conformity with the Utah Trust Deed Act, UCA 57-1-19, et seq.

**Duty to Maintain.** Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and

## DEED OF TRUST

Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this Deed of Trust.

Maintenance of Insurance. Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of Trustor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

Application of Proceeds. Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

LENDER'S EXPENDITURES. If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Promises. All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Trustor's

Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Trustor will be in default under this Deed of Trust if any of the following happen: (A) Trustor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement

# DEED OF TRUST

### (Continued)

about Trustor's income, assets, liabilities, or any other aspects of Trustor's financial condition. (B) Trustor does not meet the repayment terms of the Credit Agreement. (C) Trustor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Trustor to declare the entire Indebtedness immediately due and payable.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Trustor hereby waives any requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Loan No: 127951531

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of UTAH County, State of Utah. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Deed of Trust or required by law, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Deed of Trust, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Notwithstanding any other provision of this Deed of Trust, all notices given under Utah Code Ann. Section 57-1-26 shall be given as required therein. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided by applicable law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Utah.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor. Trustor waives all rights of exemption from execution or similar law in the Property, and Trustor agrees that the rights of Lender in the Property under this Deed of Trust are prior to Trustor's rights while this Deed of Trust remains in effect.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Utah as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means CENTRAL BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means AARON A. WAGNER and includes all co-signers and co-makers signing the Credit Agreement

# DEED OF TRUST

(Continued)

and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated November 5, 2019, **with credit limit of $2,668,986.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means CENTRAL BANK, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means CENTRAL BANK, AMERICAN FORK OFFICE, whose address is P.O. BOX 157, AMERICAN FORK, UT 84003 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means AARON A. WAGNER.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

X _____
AARON A. WAGNER

**DEED OF TRUST**
(Continued)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Utah_ )
) SS
COUNTY OF _Utah_ )

> GREG EDWARD ANDRESON
> NOTARY PUBLIC • STATE OF UTAH
> COMMISSION# 708515
> COMM. EXP. 10-02-2023

On this day before me, the undersigned Notary Public, personally appeared **AARON A. WAGNER**, to me known to be the individual described in and who executed the Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _____5_____ day of _November_ , 20 _19_ .

By _____   Residing at _Pleasant Fork, UT_

Notary Public in and for the State of _Utah_   My commission expires _10-2-23_

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ , Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Credit Agreement secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____   Beneficiary: _____

By: _____

Its: _____

LaserPro, Ver. 19.3.0.038 Copr. Finastra USA Corporation 1997, 2019. All Rights Reserved. - UT C:\LOANS\CFI\LPL\G01.FC TR-46685 PR-10

**EXHIBIT D**

| EFFECTIVE DATE | POSTED DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT | PRINCIPAL AMOUNT | INTEREST AMOUNT | LATE CHARGE | RUNNING BALANCE |
|---|---|---|---|---|---|---|---|
| 07/25/25 | 07/25/25 | 84-Finance Charge | 40,181.64 | | | | 2,716,955.00 |
| 07/25/25 | 07/25/25 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,716,955.00 |
| 07/18/25 | 07/18/25 | 52-Legal Fees- Per CJ | 1,328.00 | 1,328.00 | | | 2,716,955.00 |
| 06/25/25 | 06/25/25 | 84-Finance Charge | 41,515.61 | | | | 2,715,627.00 |
| 06/24/25 | 06/24/25 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,715,627.00 |
| 05/25/25 | 05/25/25 | 84-Finance Charge | 40,176.40 | | | | 2,715,627.00 |
| 05/25/25 | 05/25/25 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,715,627.00 |
| 04/25/25 | 04/25/25 | 84-Finance Charge | 41,454.73 | | | | 2,715,627.00 |
| 04/24/25 | 04/24/25 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,715,627.00 |
| 04/16/25 | 04/17/25 | 52-LEGAL FEES PER RS | 5,544.72 | 5,544.72 | | | 2,715,627.00 |
| 03/28/25 | 03/31/25 | 52-LEGAL FEES PER RS | 294.00 | 294.00 | | | 2,710,082.28 |
| 03/27/25 | 03/27/25 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,709,788.28 |
| 03/25/25 | 03/25/25 | 84-Finance Charge | 37,417.35 | | | | 2,709,788.28 |
| 02/25/25 | 02/25/25 | 84-Finance Charge | 41,423.99 | | | | 2,709,788.28 |
| 02/24/25 | 02/24/25 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,709,788.28 |
| 01/30/25 | 01/31/25 | 52-LEGAL FEES PER RS | 960.00 | 960.00 | | | 2,709,788.28 |
| 01/25/25 | 01/25/25 | 84-Finance Charge | 41,411.68 | | | | 2,708,828.28 |
| 01/24/25 | 01/24/25 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,708,828.28 |
| 12/25/24 | 12/25/24 | 84-Finance Charge | 40,008.11 | | | | 2,708,828.28 |
| 12/25/24 | 12/25/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,708,828.28 |
| 12/10/24 | 12/10/24 | 98-08/12/24 PAYMENT 120 DAYS | | | | | 2,708,828.28 |
| 12/10/24 | 12/11/24 | 52-LEGAL FEES PER RS | 9,152.32 | 9,152.32 | | | 2,708,828.28 |
| 11/25/24 | 11/25/24 | 84-Finance Charge | 41,730.04 | | | | 2,699,675.96 |
| 11/24/24 | 11/24/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,699,675.96 |
| 11/13/24 | 11/13/24 | 81-In Accr Incr/rate chg to | 3,838.95 | | 3838.95 | | 2,699,675.96 |
| 11/10/24 | 11/10/24 | 98-08/12/24 PAYMENT 90 DAYS | | | | | 2,699,675.96 |
| 11/07/24 | 11/07/24 | 40-Allied Ins 10/31/24 - 10/ | 30,639.96 | 30,639.96 | | | 2,699,675.96 |
| 11/04/24 | 11/04/24 | 86-Annual Fee | 50.00 | 50.00 | | | 2,669,036.00 |
| 10/31/24 | 10/31/24 | 99-Annual Percentage Rate 9. | | | | | 2,668,986.00 |
| 10/31/24 | 10/31/24 | 93-Daily Periodic Rate .0253 | | | | | 2,668,986.00 |
| 10/25/24 | 10/25/24 | 84-Finance Charge | 20,291.61 | | | | 2,668,986.00 |
| 10/25/24 | 10/25/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 10/11/24 | 10/11/24 | 98-08/12/24 PAYMENT 60 DAYS | | | | | 2,668,986.00 |
| 09/25/24 | 09/25/24 | 84-Finance Charge | 21,882.03 | | | | 2,668,986.00 |
| 09/24/24 | 09/24/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 09/20/24 | 09/20/24 | 99-INT RATE 9.75000% TO 9.25 | | | | | 2,668,986.00 |
| 09/20/24 | 09/20/24 | 93-PER RATE .0267123% TO .02 | | | | | 2,668,986.00 |
| 09/11/24 | 09/11/24 | 98-08/12/24 PAYMENT 30 DAYS | | | | | 2,668,986.00 |
| 09/05/24 | 09/05/24 | 10-JULY HELOC*1531 PMT FROM | 21,388.45- | | 21388.45- | | 2,668,986.00 |
| 08/25/24 | 08/25/24 | 84-Finance Charge | 22,101.40 | | | | 2,668,986.00 |
| 08/24/24 | 08/24/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 08/02/24 | 08/05/24 | 45-Pmt Reversal | 22,101.39 | | 22101.39 | | 2,668,986.00 |
| 08/02/24 | 08/02/24 | 10-PMT TO HELOC FROM 7191 | 22,101.39- | | 22101.39- | | 2,668,986.00 |
| 07/25/24 | 07/25/24 | 84-Finance Charge | 21,388.45 | | | | 2,668,986.00 |
| 07/25/24 | 07/25/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 06/28/24 | 06/28/24 | 12-PMT FROM 8116 | 21,388.45- | | 21388.45- | | 2,668,986.00 |
| 06/25/24 | 06/25/24 | 84-Finance Charge | 22,101.40 | | | | 2,668,986.00 |
| 06/24/24 | 06/24/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 05/25/24 | 05/25/24 | 84-Finance Charge | 21,388.45 | | | | 2,668,986.00 |
| 05/10/24 | 05/10/24 | 12-From Checking/ *8116 | 22,101.40- | | 22101.40- | | 2,668,986.00 |

| EFFECTIVE DATE | POSTED DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT | PRINCIPAL AMOUNT | INTEREST AMOUNT | LATE CHARGE | RUNNING BALANCE |
|---|---|---|---|---|---|---|---|
| 04/25/24 | 04/25/24 | 84-Finance Charge | 22,101.40 | | | | 2,668,986.00 |
| 04/22/24 | 04/22/24 | 12-March pmt to 1531 frm 811 | 42,776.90- | | 42776.90- | | 2,668,986.00 |
| 04/10/24 | 04/10/24 | 98-03/11/24 PAYMENT 30 DAYS | | | | | 2,668,986.00 |
| 03/26/24 | 03/26/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 03/25/24 | 03/25/24 | 84-Finance Charge | 20,675.50 | | | | 2,668,986.00 |
| 02/27/24 | 02/27/24 | 12-Interest Only | 21,810.99- | | 21810.99- | | 2,668,986.00 |
| 02/25/24 | 02/25/24 | 84-Finance Charge | 22,101.40 | | | | 2,668,986.00 |
| 02/24/24 | 02/24/24 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 01/25/24 | 01/25/24 | 84-Finance Charge | 21,811.00 | | | | 2,668,986.00 |
| 01/05/24 | 01/05/24 | 51-xfr to 8116 frm 1531 GEA | 84,144.27 | 84,144.27 | | | 2,668,986.00 |
| 01/05/24 | 01/05/24 | 51-Jan pmt from 1531 | 20,383.02 | 20,383.02 | | | 2,584,841.73 |
| 01/05/24 | 01/05/24 | 12-Jan pmt to *1531 | 20,383.02- | | 20383.02- | | 2,564,458.71 |
| 12/28/23 | 12/28/23 | 51-dec heloc pmt to *1531 | 20,937.81 | 20,937.81 | | | 2,564,458.71 |
| 12/28/23 | 12/28/23 | 12-dec int pmt from heloc *1 | 20,937.81- | | 20937.81- | | 2,543,520.90 |
| 12/25/23 | 12/25/23 | 84-Finance Charge | 20,383.01 | | | | 2,543,520.90 |
| 12/25/23 | 12/25/23 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,543,520.90 |
| 11/25/23 | 11/25/23 | 84-Finance Charge | 20,937.81 | | | | 2,543,520.90 |
| 11/06/23 | 11/06/23 | 51-NOV LN PMT PER DBB | 20,268.80 | 20,268.80 | | | 2,543,520.90 |
| 11/06/23 | 11/06/23 | 51-OCT LN PMT PER DBB | 22,101.40 | 22,101.40 | | | 2,523,252.10 |
| 11/06/23 | 11/06/23 | 12-NOV LN PMT PER DBB | 20,268.80- | | 20268.80- | | 2,501,150.70 |
| 11/06/23 | 11/06/23 | 12-OCT LN PMT PER DBB | 22,101.40- | | 22101.40- | | 2,501,150.70 |
| 11/05/23 | 11/05/23 | 86-Annual Fee | 50.00 | 50.00 | | | 2,501,150.70 |
| 10/25/23 | 10/25/23 | 84-Finance Charge | 20,268.81 | | | | 2,501,100.70 |
| 10/25/23 | 10/25/23 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,501,100.70 |
| 10/04/23 | 10/04/23 | 11-Wire Wagscap/127951531 | 84,885.30- | 84,885.30- | | | 2,501,100.70 |
| 09/28/23 | 09/28/23 | 51-TRSF *8116 FOR WIRE PER A | 17,000.00 | 17,000.00 | | | 2,585,986.00 |
| 09/28/23 | 09/28/23 | 11-DEPOSIT WIRE 9/28 | 100,000.00- | 100,000.00- | | | 2,568,986.00 |
| 09/25/23 | 09/25/23 | 84-Finance Charge | 22,101.40 | | | | 2,668,986.00 |
| 09/25/23 | 09/25/23 | 12-SEPT LOAN PMT PER DBB | 22,064.84- | | 22064.84- | | 2,668,986.00 |
| 09/24/23 | 09/24/23 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 09/22/23 | 09/22/23 | 51-ADV CHECKING WAGSCAP *811 | 100,000.00 | 100,000.00 | | | 2,668,986.00 |
| 09/22/23 | 09/22/23 | 11-9/21 WIRE PMT | 100,000.00- | 100,000.00- | | | 2,568,986.00 |
| 08/25/23 | 08/25/23 | 84-Finance Charge | 22,064.84 | | | | 2,668,986.00 |
| 08/15/23 | 08/15/23 | 12-july & aug pmts from *811 | 42,374.72- | | 42374.72- | | 2,668,986.00 |
| 08/09/23 | 08/09/23 | 98-07/10/23 PAYMENT 30 DAYS | | | | | 2,668,986.00 |
| 07/28/23 | 07/28/23 | 99-INT RATE 9.50000% TO 9.75 | | | | | 2,668,986.00 |
| 07/28/23 | 07/28/23 | 93-PER RATE .0260274% TO .02 | | | | | 2,668,986.00 |
| 07/25/23 | 07/25/23 | 84-Finance Charge | 20,840.03 | | | | 2,668,986.00 |
| 07/25/23 | 07/25/23 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 06/27/23 | 06/27/23 | 12-June pmt to 1531 frm 8116 | 20,675.50- | | 20675.50- | | 2,668,986.00 |
| 06/25/23 | 06/25/23 | 84-Finance Charge | 21,534.70 | | | | 2,668,986.00 |
| 06/24/23 | 06/24/23 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 05/31/23 | 05/31/23 | 12-MAY LOAN PMT PER DBB/GEA | 20,968.00- | | 20968.00- | | 2,668,986.00 |
| 05/25/23 | 05/25/23 | 84-Finance Charge | 20,675.50 | | | | 2,668,986.00 |
| 05/25/23 | 05/25/23 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 05/05/23 | 05/05/23 | 99-INT RATE 9.25000% TO 9.50 | | | | | 2,668,986.00 |
| 05/05/23 | 05/05/23 | 93-PER RATE .0253425% TO .02 | | | | | 2,668,986.00 |
| 04/25/23 | 04/25/23 | 84-Finance Charge | 20,967.99 | | | | 2,668,986.00 |
| 04/17/23 | 04/17/23 | 12-Pmt to 1531 from 8116 | 18,463.53- | | 18463.53- | | 2,668,986.00 |
| 03/25/23 | 03/25/23 | 84-Finance Charge | 18,463.53 | | | | 2,668,986.00 |

| EFFECTIVE DATE | POSTED DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT | PRINCIPAL AMOUNT | INTEREST AMOUNT | LATE CHARGE | RUNNING BALANCE |
|---|---|---|---|---|---|---|---|
| 03/24/23 | 03/24/23 | 99-INT RATE 9.00000% TO 9.25 | | | | | 2,668,986.00 |
| 03/24/23 | 03/24/23 | 93-PER RATE .0246575% TO .02 | | | | | 2,668,986.00 |
| 03/21/23 | 03/21/23 | 12-MARCH HELOC PMT PER DBB | 20,228.24- | | 20228.24- | | 2,668,986.00 |
| 02/25/23 | 02/25/23 | 84-Finance Charge | 20,255.24 | | | | 2,668,986.00 |
| 02/24/23 | 02/24/23 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,986.00 |
| 02/24/23 | 02/27/23 | 12-FEB HELOC PMT PER DBB | 19,861.84- | | 19861.84- | | 2,668,986.00 |
| 02/24/23 | 02/24/23 | 11-FEB PRINC PMT PER DBB | 27.00- | 27.00- | | | 2,668,986.00 |
| 02/03/23 | 02/03/23 | 99-INT RATE 8.75000% TO 9.00 | | | | | 2,669,013.00 |
| 02/03/23 | 02/03/23 | 93-PER RATE .0239726% TO .02 | | | | | 2,669,013.00 |
| 01/25/23 | 01/25/23 | 84-Finance Charge | 19,834.84 | | | | 2,669,013.00 |
| 01/09/23 | 01/10/23 | 82-Accr Int Decr | .01 | | .01 | | 2,669,013.00 |
| 01/09/23 | 01/10/23 | 12-DEC LOAN PMT PER DBB | 18,070.26- | | 18070.26- | | 2,669,013.00 |
| 01/09/23 | 01/09/23 | 12-JAN LOAN PMT PER DBB | 18,436.82- | | 18436.82- | | 2,669,013.00 |
| 01/09/23 | 01/10/23 | 11-DEC LOAN PMT PER DBB | 15.32- | 15.32- | | | 2,669,013.00 |
| 12/25/22 | 12/25/22 | 84-Finance Charge | 18,463.83 | | | | 2,669,028.32 |
| 12/25/22 | 12/16/22 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,669,028.32 |
| 12/16/22 | 12/16/22 | 99-INT RATE 8.25000% TO 8.75 | | | | | 2,669,028.32 |
| 12/16/22 | 12/16/22 | 93-PER RATE .0226027% TO .02 | | | | | 2,669,028.32 |
| 11/25/22 | 11/25/22 | 84-Finance Charge | 18,043.26 | | | | 2,669,028.32 |
| 11/21/22 | 11/21/22 | 12-NOV LOAN PMT PER DBB FROM | 16,452.61- | | 16452.61- | | 2,669,028.32 |
| 11/21/22 | 11/21/22 | 12-OCT LOAN PMT PER DBB FROM | 15,465.45- | | 15465.45- | | 2,669,028.32 |
| 11/09/22 | 11/09/22 | 98-10/10/22 PAYMENT 30 DAYS | | | | | 2,669,028.32 |
| 11/07/22 | 11/07/22 | 99-INT RATE 7.50000% TO 8.25 | | | | | 2,669,028.32 |
| 11/07/22 | 11/07/22 | 93-PER RATE .0205479% TO .02 | | | | | 2,669,028.32 |
| 11/05/22 | 11/05/22 | 86-Annual Fee | 50.00 | 50.00 | | | 2,669,028.32 |
| 10/25/22 | 10/25/22 | 84-Finance Charge | 16,452.61 | | | | 2,668,978.32 |
| 10/25/22 | 10/25/22 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,978.32 |
| 10/19/22 | 10/19/22 | 12-Sept payment from 8116 DB | 15,136.39- | | 15136.39- | | 2,668,978.32 |
| 10/09/22 | 10/09/22 | 98-09/09/22 PAYMENT 30 DAYS | | | | | 2,668,978.32 |
| 09/25/22 | 09/25/22 | 84-Finance Charge | 15,465.45 | | | | 2,668,978.32 |
| 09/24/22 | 09/24/22 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,978.32 |
| 09/23/22 | 09/23/22 | 99-INT RATE 6.75000% TO 7.50 | | | | | 2,668,978.32 |
| 09/23/22 | 09/23/22 | 93-PER RATE .0184932% TO .02 | | | | | 2,668,978.32 |
| 08/25/22 | 08/25/22 | 84-Finance Charge | 15,136.40 | | | | 2,668,978.32 |
| 08/19/22 | 08/19/22 | 12-LOAN PMT PER DBB FROM*811 | 13,162.09- | | 13162.09- | | 2,668,978.32 |
| 07/29/22 | 07/29/22 | 99-INT RATE 6.00000% TO 6.75 | | | | | 2,668,978.32 |
| 07/29/22 | 07/29/22 | 93-PER RATE .0164384% TO .01 | | | | | 2,668,978.32 |
| 07/27/22 | 07/27/22 | 12-LOAN PMT PER DBB FROM*811 | 12,174.93- | | 12174.93- | | 2,668,978.32 |
| 07/25/22 | 07/25/22 | 84-Finance Charge | 13,162.08 | | | | 2,668,978.32 |
| 07/25/22 | 07/25/22 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,978.32 |
| 06/25/22 | 06/25/22 | 84-Finance Charge | 12,174.93 | | | | 2,668,978.32 |
| 06/21/22 | 06/21/22 | 99-INT RATE 5.25000% TO 6.00 | | | | | 2,668,978.32 |
| 06/21/22 | 06/21/22 | 93-PER RATE .0143836% TO .01 | | | | | 2,668,978.32 |
| 06/17/22 | 06/17/22 | 12-Pay Ln *1531 from Cking * | 11,151.21- | | 11151.21- | | 2,668,978.32 |
| 05/25/22 | 05/25/22 | 84-Finance Charge | 11,151.21 | | | | 2,668,978.32 |
| 05/12/22 | 05/12/22 | 12-MAY HELOC PMT FROM *8116 | 10,767.31- | | 10767.31- | | 2,668,978.32 |
| 05/06/22 | 05/06/22 | 99-INT RATE 4.75000% TO 5.25 | | | | | 2,668,978.32 |
| 05/06/22 | 05/06/22 | 93-PER RATE .0130137% TO .01 | | | | | 2,668,978.32 |
| 04/28/22 | 04/28/22 | 12-APRIL PAYMENT FROM *8116 | 9,250.03- | | 9250.03- | | 2,668,978.32 |
| 04/25/22 | 04/25/22 | 84-Finance Charge | 10,767.32 | | | | 2,668,978.32 |

| EFFECTIVE DATE | POSTED DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT | PRINCIPAL AMOUNT | INTEREST AMOUNT | LATE CHARGE | RUNNING BALANCE |
|---|---|---|---|---|---|---|---|
| 04/24/22 | 04/24/22 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,978.32 |
| 03/28/22 | 03/28/22 | 12-MAR INT PMT *8116 | 10,200.61- | | 10200.61- | | 2,668,978.32 |
| 03/27/22 | 03/27/22 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,978.32 |
| 03/25/22 | 03/25/22 | 84-Finance Charge | 9,250.02 | | | | 2,668,978.32 |
| 03/24/22 | 03/24/22 | 99-INT RATE 4.50000% TO 4.75 | | | | | 2,668,978.32 |
| 03/24/22 | 03/24/22 | 93-PER RATE .0123288% TO .01 | | | | | 2,668,978.32 |
| 03/01/22 | 03/01/22 | 12-Interest Payment from *81 | 10,200.62- | | 10200.62- | | 2,668,978.32 |
| 02/25/22 | 02/25/22 | 84-Finance Charge | 10,200.62 | | | | 2,668,978.32 |
| 02/24/22 | 02/24/22 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,978.32 |
| 01/25/22 | 01/25/22 | 84-Finance Charge | 10,200.62 | | | | 2,668,978.32 |
| 01/24/22 | 01/24/22 | 12-Interest Payment from *81 | 9,871.56- | | 9871.56- | | 2,668,978.32 |
| 12/25/21 | 12/25/21 | 84-Finance Charge | 9,871.56 | | | | 2,668,978.32 |
| 12/17/21 | 12/17/21 | 12-Nov/Dec Interest Pmt | 20,071.93- | | 20071.93- | | 2,668,978.32 |
| 12/09/21 | 12/09/21 | 98-11/09/21 PAYMENT 30 DAYS | | | | | 2,668,978.32 |
| 11/25/21 | 11/25/21 | 84-Finance Charge | 10,200.55 | | | | 2,668,978.32 |
| 11/24/21 | 11/24/21 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,978.32 |
| 11/05/21 | 11/05/21 | 86-Annual Fee | 50.00 | 50.00 | | | 2,668,978.32 |
| 10/25/21 | 10/25/21 | 84-Finance Charge | 9,871.38 | | | | 2,668,928.32 |
| 10/25/21 | 10/25/21 | 12-Sep/Oct Payments from *81 | 20,400.85- | | 20400.85- | | 2,668,928.32 |
| 10/09/21 | 10/09/21 | 98-09/09/21 PAYMENT 30 DAYS | | | | | 2,668,928.32 |
| 09/25/21 | 09/25/21 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 09/24/21 | 09/24/21 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 08/27/21 | 08/27/21 | 12-Interest Payment from *81 | 9,871.38- | | 9871.38- | | 2,668,928.32 |
| 08/25/21 | 08/25/21 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 08/24/21 | 08/24/21 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 07/25/21 | 07/25/21 | 84-Finance Charge | 9,871.38 | | | | 2,668,928.32 |
| 07/23/21 | 07/23/21 | 12-Pmt from *8116 per DBB | 10,200.43- | | 10200.43- | | 2,668,928.32 |
| 06/30/21 | 06/30/21 | 12-Pmt from *8116 per DBB | 9,871.38- | | 9871.38- | | 2,668,928.32 |
| 06/25/21 | 06/25/21 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 06/24/21 | 06/24/21 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 05/25/21 | 05/25/21 | 84-Finance Charge | 9,871.38 | | | | 2,668,928.32 |
| 05/17/21 | 05/17/21 | 12-Pmt from *8116 per DBB | 10,200.42- | | 10200.42- | | 2,668,928.32 |
| 04/25/21 | 04/25/21 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 04/16/21 | 04/16/21 | 12-Pmt from *8116 per DBB | 9,213.29- | | 9213.29- | | 2,668,928.32 |
| 03/25/21 | 03/25/21 | 84-Finance Charge | 9,213.29 | | | | 2,668,928.32 |
| 03/12/21 | 03/12/21 | 12-Payment from *8116 per DB | 10,200.42- | | 10200.42- | | 2,668,928.32 |
| 02/25/21 | 02/25/21 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 02/25/21 | 02/25/21 | 12-Pmt from *8116 per DBB | 10,200.43- | | 10200.43- | | 2,668,928.32 |
| 02/24/21 | 02/24/21 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 01/25/21 | 01/25/21 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 01/11/21 | 01/11/21 | 12-Pmt from *8116 per DBB | 9,871.38- | | 9871.38- | | 2,668,928.32 |
| 12/30/20 | 12/30/20 | 12-Pmt from *8116 per DBB | 20,071.80- | | 20071.80- | | 2,668,928.32 |
| 12/25/20 | 12/25/20 | 84-Finance Charge | 9,871.38 | | | | 2,668,928.32 |
| 12/25/20 | 12/25/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 12/09/20 | 12/09/20 | 98-11/09/20 PAYMENT 30 DAYS | | | | | 2,668,928.32 |
| 11/25/20 | 11/25/20 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 11/24/20 | 11/24/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 10/25/20 | 10/25/20 | 84-Finance Charge | 9,871.38 | | | | 2,668,928.32 |
| 10/23/20 | 10/23/20 | 12-Sept & Oct pmt from *8116 | 12,245.76- | | 12245.76- | | 2,668,928.32 |
| 10/09/20 | 10/09/20 | 98-09/09/20 PAYMENT 30 DAYS | | | | | 2,668,928.32 |

| EFFECTIVE DATE | POSTED DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT | PRINCIPAL AMOUNT | INTEREST AMOUNT | LATE CHARGE | RUNNING BALANCE |
|---|---|---|---|---|---|---|---|
| 09/25/20 | 09/25/20 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 09/25/20 | 09/25/20 | 12-INTEREST PAYMENT FROM CHE | 15,200.43- | | 15200.43- | | 2,668,928.32 |
| 09/24/20 | 09/24/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 09/08/20 | 09/08/20 | 98-08/09/20 PAYMENT 30 DAYS | | | | | 2,668,928.32 |
| 08/26/20 | 08/26/20 | 12-PAYMENT FROM CHECKING *71 | 14,871.38- | | 14871.38- | | 2,668,928.32 |
| 08/26/20 | 08/26/20 | 12-PAYMENT FROM CHECKING *71 | 14,871.38- | | 14871.38- | | 2,668,928.32 |
| 08/25/20 | 08/25/20 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 08/24/20 | 08/24/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 08/09/20 | 08/09/20 | 98-07/10/20 PAYMENT 30 DAYS | | | | | 2,668,928.32 |
| 07/29/20 | 07/29/20 | 12-DEFERRAL PAYMENT MAKE UP | 5,000.00- | | 5000.00- | | 2,668,928.32 |
| 07/25/20 | 07/25/20 | 84-Finance Charge | 9,871.38 | | | | 2,668,928.32 |
| 07/25/20 | 07/25/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 07/22/20 | 07/22/20 | 12-JUNE INTEREST FROM CHECKI | 9,865.38- | | 9865.38- | | 2,668,928.32 |
| 07/09/20 | 07/09/20 | 98-06/09/20 PAYMENT 30 DAYS | | | | | 2,668,928.32 |
| 06/25/20 | 06/25/20 | 84-Finance Charge | 10,200.42 | | | | 2,668,928.32 |
| 06/24/20 | 06/24/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 06/09/20 | 06/09/20 | 96-WAIVE LATE FEES PER DBB | 800.00- | | | 800.00- | 2,668,928.32 |
| 05/25/20 | 05/25/20 | 84-Finance Charge | 9,865.37 | | | | 2,668,928.32 |
| 05/25/20 | 05/25/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 05/18/20 | 05/18/20 | 12-int. payment for def. *81 | 1,200.57- | | 1200.57- | | 2,668,928.32 |
| 05/09/20 | 05/09/20 | 98-04/09/20 PAYMENT 30 DAYS | | | | | 2,668,928.32 |
| 05/04/20 | 05/04/20 | 81-Reversal Accrued Int Incr | .11 | | .11 | | 2,668,928.32 |
| 04/25/20 | 04/25/20 | 84-Finance Charge | 10,176.73 | | | | 2,668,928.32 |
| 04/24/20 | 04/24/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 04/10/20 | 04/10/20 | 12-Auto payment on loan 1279 | 6,200.00- | | 6200.00- | | 2,668,928.32 |
| 03/25/20 | 03/25/20 | 84-Finance Charge | 11,539.58 | | | | 2,668,928.32 |
| 03/18/20 | 03/18/20 | 99-INT RATE 5.50000% TO 4.50 | | | | | 2,668,928.32 |
| 03/18/20 | 03/18/20 | 93-PER RATE .0150685% TO .01 | | | | | 2,668,928.32 |
| 03/10/20 | 03/10/20 | 99-INT RATE 6.00000% TO 5.50 | | | | | 2,668,928.32 |
| 03/10/20 | 03/10/20 | 93-PER RATE .0164384% TO .01 | | | | | 2,668,928.32 |
| 03/10/20 | 03/11/20 | 82-Accr Int Decr | .94 | | .94 | | 2,668,928.32 |
| 03/10/20 | 05/04/20 | 45-Pmt Reversal | 6,200.00 | 6,200.00 | | | 2,668,928.32 |
| 03/10/20 | 05/04/20 | 12-INTEREST PAYMENT | 6,200.00- | | 6200.00- | | 2,662,728.32 |
| 03/10/20 | 03/11/20 | 11-AUTO PAYMENT ON LOAN 1279 | 6,200.00- | 6,200.00- | | | 2,662,728.32 |
| 02/25/20 | 02/25/20 | 84-Finance Charge | 13,600.57 | | | | 2,668,928.32 |
| 02/25/20 | 02/25/20 | 12-FEBRUARY INTEREST PAYMENT | 13,600.57- | | 13600.57- | | 2,668,928.32 |
| 02/25/20 | 02/25/20 | 12-JANUARY INTEREST PAYMENT | 6,962.00- | | 6962.00- | | 2,668,928.32 |
| 02/24/20 | 02/24/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 02/08/20 | 02/08/20 | 98-01/09/20 PAYMENT 30 DAYS | | | | | 2,668,928.32 |
| 01/25/20 | 01/25/20 | 84-Finance Charge | 13,600.57 | | | | 2,668,928.32 |
| 01/24/20 | 01/24/20 | 78-Late Chg Fee | 200.00 | | | 200.00 | 2,668,928.32 |
| 01/16/20 | 01/16/20 | 12-Auto payment on loan 1279 | 6,200.00- | | 6200.00- | | 2,668,928.32 |
| 12/25/19 | 12/25/19 | 84-Finance Charge | 13,162.00 | | | | 2,668,928.32 |
| 12/13/19 | 12/16/19 | 82-Accr Int Decr | .03 | | .03 | | 2,668,928.32 |
| 12/13/19 | 12/16/19 | 12-AUTO PAYMENT ON LOAN 1279 | 6,142.32- | | 6142.32- | | 2,668,928.32 |
| 12/13/19 | 12/16/19 | 11-AUTO PAYMENT ON LOAN 1279 | 57.68- | 57.68- | | | 2,668,928.32 |
| 11/25/19 | 12/25/19 | 84-Finance Charge | 6,142.32 | | | | 2,668,986.00 |
| 11/12/19 | 11/12/19 | 40-WIRE TRANSFER | 2,662,500.00 | 2,662,500.00 | | | 2,668,986.00 |
| 11/12/19 | 11/12/19 | 40-APPRAISAL FEE | 2,000.00 | 2,000.00 | | | 6,486.00 |
| 11/12/19 | 11/12/19 | 40-TITLE INSURANCE | 4,396.00 | 4,396.00 | | | 4,486.00 |

| EFFECTIVE DATE | POSTED DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT | PRINCIPAL AMOUNT | INTEREST AMOUNT | LATE CHARGE | RUNNING BALANCE |
|---|---|---|---|---|---|---|---|
| 11/12/19 | 11/12/19 | 40-RECORD DEED OF TRUST | 90.00 | 90.00 | | | 90.00 |

**EXHIBIT E**

ENT **80331:2024** PG 1 of 3
**ANDREA ALLEN**
**UTAH COUNTY RECORDER**
2024 Nov 14 04:33 PM FEE 40.00 BY CS
RECORDED FOR Cohne Kinghorn, P.C.
ELECTRONICALLY RECORDED

**RECORDED AT REQUEST OF,**
**AND WHEN RECORDED MAIL TO:**

J. Scott Brown, Esq.
COHNE KINGHORN
A Professional Corporation
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111

# NOTICE OF DEFAULT

PLEASE TAKE NOTICE that J. Scott Brown, Esq., of COHNE KINGHORN, is successor trustee under that certain Revolving Credit Deed of Trust (the "**Trust Deed**"), dated November 5, 2019, executed by AARON A. WAGNER ("**Trustor**"), as trustor, in favor of CENTRAL BANK, as trustee and as beneficiary. The Trust Deed was filed for record in the office of the Utah County, Utah Recorder on November 13, 2019, as Entry No. 118625:2019, official records of Utah County, Utah. The Trust Deed encumbers the following described parcel of real property (the "**Trust Property**") situated in Utah County, Utah:

> LOT 4, PLAT "F", BENNETT FARMS SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF, ON FILE AND OF RECORD IN THE OFFICE OF THE UTAH COUNTY RECORDER, STATE OF UTAH.

The Trust Property or its address is approximately known as follows: 781 North Country Manor Lane, Alpine, Utah 84004. The Trust Property's tax identification number is known as follows: 35:681:0004. The Successor Trustee hereby disclaims liability for any error in the legal description, address or any other common designation of the Trust Property.

The Trust Deed was given for good and valuable consideration and to secure certain obligations in favor of CENTRAL BANK including, but not limited to, the following: the obligations which are represented by that certain Home Equity Line of Credit Agreement and Disclosure (the "**Agreement**"), dated November 5, 2019, which Trustor, as borrower, made, executed and delivered to CENTRAL BANK.

Default has occurred under the Trust Deed as follows:

1.    The monthly minimum payments under the Agreement are past due and owing, and have not been paid.

2.    The accrued interest under the Agreement is past due and owing, and has not been paid.

3.    The late fees under the Agreement are past due and owing, and have not been paid.

4. The real property taxes for the Trust Property, which taxes were due and owing and have not paid.

5. Trustor's actions and/or inactions adversely affect the Trust Property and/or Central Bank's rights in and to the Trust Property.

6. The failure to comply with or perform other obligations, covenants and conditions contained in the agreements between CENTRAL BANK and Trustor.

7. There has been a material adverse change in Trustor's financial conditions and/or business operations, which CENTRAL BANK believes the prospect of payment or performance of the "Indebtedness," as defined by the Trust Deed, is impaired.

8. Lender (*i.e.,* Central Bank) in good faith believes itself insecure.

Because of such defaults, CENTRAL BANK has declared and hereby declares all sums secured thereby to be immediately due and payable, and has elected and hereby elects to cause the Trust Property to be sold to satisfy the obligations secured thereby. Interest and late fees continue to accrue at the default interest rate in accordance with the terms and provisions of the Agreement, the Trust Deed and the related loan documents, the amounts of which will be furnished by CENTRAL BANK upon request.

All costs and expenses incident to foreclosure of the Trust Deed, and exercise of the power of sale including, but not limited to, reasonable attorneys' fees, are also chargeable the Agreement and related loan documents, and which are secured by the Trust Deed.

Pursuant to UTAH CODE ANN. § 57-1-26(3)(b), the following information is provided:

> J. Scott Brown, Esq.
> COHNE KINGHORN
> 111 East Broadway, 11th Floor
> Salt Lake City, Utah 84111
> Telephone No.: (801) 363-4300
> Office Hours: 8:30 a.m. through 5:30 p.m.
> Monday through Friday, except holidays

4854-1653-6825, v. 1

DATED this 14th day of November 2024.

SUCCESSOR TRUSTEE:

By: _____
J. Scott Brown
Successor Trustee

STATE OF UTAH )
                      :ss
COUNTY OF SALT LAKE )

The foregoing instrument was acknowledged before me this 14th day of November 2024, by J. Scott Brown, Esq., of COHNE KINGHORN, Successor Trustee of the Trust Deed, referred to in said instrument.



**KIM A RENAK**
Notary Public  State of Utah
My Commission Expires on:
September 18, 2027
Comm. Number: 733259

_____
Notary Public

My Commission Expires:                Residing at:

9/18/27                                    S L County

**THIS NOTICE IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

[55153.46]

3

**EXHIBIT F**



14P - CENTRAL BANK - AMERICAN FORK                    Date  7/28/25  8:26:26

## Credit Line Information

Account Number          ******1531
Current Rate              18.00000    Maturity Date          11/09/2039
Accrued Interest     454,375.71022    Day Base                     365
Per Diem               1,339.86822

## Payoff Information

AARON WAGNER                    Payoff Date                 8/29/2025
UTL                             Principal Balance        2,716,955.00
                                + Interest Amount          497,251.49
                                + Late Charges               8,200.00
                                + Advance Fees                    .00
                                + Over Limit Charge              .00
                                + Minimum Interest Charge        .00
                                + Early Payoff Penalty           .00

                                = Payoff Amount          3,222,406.49

Final payoff amount may vary based on possible rate changes or final draws, due to the nature of construction loans. please call prior to closing to verify amount. Payoff amount is quoted through the Payoff Date. Payments must be received before 5:00 p.m. to be credited on that business day.



**EXHIBIT G**



# Utah County Treasurer
# Delinquent Tax Summary

Serial Number: 35:681:0004
Delinquent Tax Summary Calculated to **07/31/2025**

| Year | Tax Balance | Penalty | Fees | Interest | Total |
|------|-------------|---------|------|----------|-------|
| 2024 | $17,907.66 | $447.69 | $0.00 | $1,066.12 | $19,421.47 |
| 2023 | $17,568.77 | $439.22 | $0.00 | $2,846.74 | $20,854.73 |
| 2022 | $15,785.61 | $394.64 | $0.00 | $4,175.83 | $20,356.08 |
| **Total** | **$51,262.04** | **$1,281.55** | **$0.00** | **$8,088.69** | **$60,632.28** |

**Total amount if paid as of 07/31/2025.** . . . . . . . . . . . . . . . .     **$60,632.28**

## Total amount is subject to change as interest is computed daily. Payments must be received in the Treasurer's office on the same day as the calculated payoff date.

To calculate amount for a different date, choose the payoff date here:

| Calculate Payoff |

`7/31/2025`   *click in box for calendar*

**All taxes, penalties, fees and interest must be paid in full. If all such items are not paid by March 15 following the lapse of four years from the date when the property tax became delinquent, the property will be subject to sale at the annual Utah County Tax Sale. Tax Sale properties will incur an administration fee of $165.** *Utah Code Annotated 59-2-1343*

The Treasurer has no authority to waive taxes, penalties, fees or interest. Verify the parcel description for accuracy; this office is not responsible if payments are made on the wrong property.

KIM T. JACKSON
Treasurer, Utah County
100 East Center Street Ste 1200
Provo, UT 84606-3159
801-851-8255 or 801-851-8264

[Main Menu](#)

Comments or Concerns on Value/Appraisal - [Assessor's Office](#)
Documents/Owner/Parcel Info - [Recorder's Office](#)
[Address Change for Tax Notice](#)

This page was created on 7/31/2025 at 03:52:44 PM